1   Cindy A. Cohn, Esq. (State Bar No. 145997)
    ELECTRONIC FRONTIER FOUNDATION
2   454 Shotwell Street
    San Francisco, CA 94110
3   Telephone:  (415) 436-9333 x108
    Facsimile:   (415) 436-9993
4

5   Attorneys for Amici Curiae
    ELECTRONIC FRONTIER FOUNDATION,
6   PUBLIC CITIZEN LITIGATION GROUP and
    THE AMERICAN CIVIL LIBERTIES UNION
7

8               UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  PRIORITY RECORDS LLC, et al.,      )   Case No. C-04-1136 WDB
                                       )
12                      Plaintiffs,    )   **AMICUS BRIEF OF ELECTRONIC**
                                       )   **FRONTIER FOUNDATION, PUBLIC**
13      v.                             )   **CITIZEN LITIGATION GROUP, AND**
                                       )   **AMERICAN CIVIL LIBERTIES UNION**
14  DOES 1 - 8,                        )   **CONCERNING MISCELLANEOUS**
                                       )   **ADMINISTRATIVE REQUEST FOR**
15                      Defendants.    )   **LEAVE TO TAKE IMMEDIATE**
                                       )   **DISCOVERY PURSUANT TO LOCAL**
16                                     )   **RULE 7-10(B)**
                                       )
17                                     )
                                       )
18  _____ )

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.  STATEMENT ............................................................................................................. 1

II.  ARGUMENT .............................................................................................................. 2

   A.  Balancing the Right to Anonymous Speech Against the Need for Disclosure. .................. 3

   B.  Personal Jurisdiction. ............................................................................................. 8

   C.  Joinder. .................................................................................................................. 9

   D.  Procedure for Subpoenas. ...................................................................................... 12

III.  CONCLUSION ......................................................................................................... 13

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*AFGE v. HUD*, 351 F.3d 1229 (D.C. Cir. 1997) ..............................................6

4

*ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002)............8

5

*Baker v. F&F Investment*, 470 F.2d 778 (2d Cir. 1972) ................................4

6

*Bates v. City of Little Rock*, 361 U.S. 516 (1960) ......................................6

7

*Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981) ......................6

8

*BMG Canada Inc., et al. v. John Doe, et al.*, 200 FC 488 (March 31, 2004) ......7

9

*BMG Music et al. v. Does 1-203*, Civil Action no. 04-650 (E.D. Pa. March 5, 2004).....................10

10

*Carey v. Hume*, 492 F.2d 631 (D.C. Cir. 1974) ......................................4

11

*Cervantes v. Time,* 464 F.2d 986 (8th Cir. 1972) ......................................4

12

*Columbia Ins. Co. v. Seescandy.com*, 185 FRD 573 (N.D.Cal. 1999) ............5, 7

13

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) ......................8

14

*Dendrite v. Doe*, 775 A.2d 756 (N.J.App. 2001)..................................4, 7, 12

15

*Ealy v. Littlejohn*, 569 F.2d 219 (5th Cir. 1978) ....................................4, 6

16

*Eldred v. Ashcroft*, 123 S.Ct. 769 (2003) ..............................................4

17

*Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001) ..........................................6

18

*Harper & Row Pub. v. Nation Enterprises*, 471 U.S. 539 (1985)....................4

19

*In re Verizon Internet Svces*, 257 F.Supp.2d 244 (D.D.C. 2003),
    *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir.)................................3

20

*In re Vitamins Antitrust Litig.*, 2000 WL 1475705 (D.D.C.) ........................11

21

*Interscope Records v. Does 1-25*, Case No. 6:04-cv-197-Orl-22DAB (M.D. Fla. April 1, 2004) ...11

22

*Kenvin v. Newburger, Loeb & Co.,* 37 F.R.D. 473 (S.D.N.Y. 1965) ................11

23

*La Societe Metro Cash & Carry France v. Time Warner Cable,*
    2003 WL 22962857 (Conn. Super.) ..............................................5

24

25

*McIntyre v. Ohio Elections Comm.*, 514 U.S. 334 (1995)............................7

26

*Melvin v. Doe*, 49 Pa.D.&C.4th 449 (2000), *appeal quashed*, 789 A.2d 696,
    2001 Pa.Super. 330 (2001), *appeal reinstated*, 836 A.2d 42 (Pa. 2003)................5, 6

27

*Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir. 1980)....................4

28

*Mink v. AAAA Development*, 190 F.3d 333 (5th Cir. 1999) ...................................................8

*Movie Systems v. Abel*, 99 F.R.D. 129 (D. Minn. 1983) ......................................................11

*NAACP v. Alabama*, 357 U.S. 449 (1958) .............................................................................6

*Nassau County Assoc. of Insurance Agents, Inc. v. Aetna Life & Casualty Co.*,
     497 F.2d 1151 (2d Cir. 1974) .......................................................................................11

*Nassau Cy. Ass'n of Ins. Agents v. Aetna Life & Cas. Co.*, 497 F.2d 1151 (2d Cir. 1974)..............12

*Neogen Corp. v. Neo Gen Screening*, 282 F.3d 883 (6th Cir. 2002).................................8

*Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946) .............................................6

*Pergo v. Alloc*, 262 F.Supp.2d 122 (S.D.N.Y. 2003) ................................................10, 11

*Re Subpoena to America Online*, 52 VaCir 26, 34 (Fairfax 2000),
     *rev'd on other grounds*, 542 S.E.2d 377 (Va. 2001) .................................................5

*Reporters Comm. for Freedom of the Press v. American Tel. & Tel. Co.*,
     593 F.2d 1030 (D.C. Cir. 1978).....................................................................................6

*RIAA v. Verizon Internet Services*, 351 F.3d 1229 (D.C. Cir. 2003)...................................2

*Smith v. Maryland*, 442 U.S. 735 (1979)..............................................................................6

*Talley v. California*, 362 U.S. 60 (1960) ..............................................................................7

*Tele-Media Co. of Western CT v. Antidormi*, 179 F.R.D. 75 (D.Conn. 1998) ...................11

*UAW v. National Right to Work*, 590 F.2d 1139 (D.C. Cir. 1978).......................................4

*United States v. Caporale*, 806 F.2d 1487 (11th Cir. 1986)..............................................4

*United States v. Hambrick*, 55 F.Supp.2d 504 (D.W.Va. 1999),
     *aff'd mem*, 225 F.3d 656 (4th Cir. 2000) .................................................................6

*University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990)..................................................6

*Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119 (W.D. Pa. 1997) .............................8

This is an action for copyright infringement in which 13 music companies seek injunctive relief, damages and fees and costs against eight anonymous and completely unrelated individuals. Plaintiffs allege that the Doe defendants have made certain data files on their personal computers, containing copyrighted musical performances, available to the general public over the Internet in a manner that enables the public to download those files to their own computers. *Amici* argue that notwithstanding the serious violations of law alleged in the complaint, plaintiffs have not made sufficient factual showing to warrant discovery into the identities of persons who have communicated anonymously over the Internet, nor have they shown that there is personal jurisdiction over each of the eight defendants, nor further, that all eight defendants are properly joined in one action particularly in light of the fact that, in justifying discovery, plaintiffs have made a factual showing with respect to two defendants but present no evidence to support identification of the other six individuals. Finally, we argue that, in the event some discovery is to be allowed, certain additional conditions should be imposed.

## I.    STATEMENT

Exhibit A to the Complaint lists, by Internet Protocol ("IP") address and five to ten songs apiece, eight Does alleged to have posted songs on particular dates ranging from September 2003 through February 2004. Plaintiffs seek to impose liability on each of the eight Does individually – there are no allegations of joint or several liability and no claims for relief in the alternative against any of them. There is also no claim that the Does acted pursuant to any common plan or conspiracy, or that their liability arises out of a common transaction or occurrence. At most, it is alleged that there have been a series of instances in which each individual defendant has used the facilities of a single Internet Service Provider ("ISP"), Covad, to display his or her respective data files on the Internet. There is no allegation that Covad itself is liable for the infringements. Plaintiffs allege generally that all defendants can be found in the Northern District of California, but their allegation of personal jurisdiction is based on the facts that the Does' Internet postings can be downloaded in every jurisdiction in the United States, including this District, and that their ISP, Covad, can be found in the Northern District of California.

Plaintiffs assert that they plan to use the identities of the anonymous defendants so that they

1  can "contact the Defendant[s] and attempt to resolve the dispute." (Plaintiffs' Misc. Admin.

2  Request, 3:13.) In support of this motion, plaintiffs submitted an affidavit from Jonathan

3  Whitehead, Vice-President of the Recording Industry Association of America ("RIAA"), a trade

4  association to which the plaintiffs belong. The affidavit characterizes Internet-enabled copyright

5  piracy as a serious economic problem for plaintiffs, and accuses the ISPs, who are not named as

6  defendants, of deliberately profiting from the use of their facilities for piracy. The affidavit further

7  explains the manner in which the RIAA investigates file-sharing systems, and how, as a general

8  matter, its staff members attempt to verify that particular anonymous individuals have made

9  copyrighted songs available for download, by observing the author and title listed for each file and

10 listening to "a sample" of the files. The affidavit asserts that Complaint Exhibit A is a listing of

11 songs identified by the RIAA as being offered for download; although the affidavit is made on

12 personal knowledge, there is no statement that the affiant himself did any of the investigation

13 described, or that anyone listened to each song listed or verified the existence of copyright

14 registrations for the songs. A complete listing of songs offered for download by only two of the

15 eight defendants has been filed with the Court.

16                                    **II.    ARGUMENT**

17        The Complaint alleges serious violations of the law with potentially serious consequences

18 for plaintiffs' economic welfare. In the recently completed litigation where the D.C. Circuit held

19 the subpoena procedure of the Digital Millennium Copyright Act ("DMCA") inapplicable to the

20 identification of subscribers who merely used an ISP's facilities to gain access to the Internet, *see*

21 *RIAA v. Verizon Internet Services*, 351 F.3d 1229 (D.C. Cir. 2003), all *amici* here filed briefs

22 urging that First Amendment principles be applied under Rule 45 to protect the right of anonymity.

23 That plaintiffs here are now invoking Rule 45 and attempting to satisfy its standards represents an

24 enormous step forward, for which they deserve credit.

25        However, as in the DMCA case, this "test case" will set standards for the application of

26 Rule 45 for subpoenas to identify alleged copyright infringers, and it is important that Due Process

27 and the First Amendment be scrupulously protected. Reluctantly, *amici* have concluded that there

28 is serious reason to question whether plaintiffs' documentation for their discovery request meets

1   those standards. Accordingly, we file this brief to describe to the Court the procedures that we

2   believe should be followed, and the ways in which plaintiffs' showings to date fall short.

3       **A.       Balancing the Right to Anonymous Speech Against the Need for Disclosure.**

4           While Plaintiffs are correct that it is commonplace for plaintiffs to be allowed discovery at

5   the outset of a lawsuit to identify otherwise unknown persons alleged to have committed a legal

6   wrong, there is a significant difference between this case and the various cases plaintiffs cite on

7   page 5 of their brief, where prisoners or arrestees sought to identify the prison or police officers

8   who allegedly beat or otherwise mistreated them. Plaintiffs accuse defendants here of having

9   engaged in wrongful but anonymous speech on the Internet. Because the First Amendment protects

10  the right to speak anonymously, a subpoena for these Does' names and addresses is subject to a

11  qualified privilege. Just as in other cases where discovery seeks information that may be privileged,

12  the Court must consider the privilege before authorizing discovery.

13          The tension between this important qualified privilege and the interest of a plaintiff who has

14  alleged wrongdoing in obtaining information needed to pursue litigation over alleged wrongdoing,

15  has been considered by a number of federal and state courts over the past several years. These

16  courts have wrestled with the fact that, at the outset of the litigation, the plaintiff has done no more

17  than allege wrongdoing, and a privilege is generally not considered to be overcome by mere

18  allegations. They have further recognized that a serious chilling effect on anonymous speech would

19  result if Internet speakers knew they could be identified by persons who merely allege wrongdoing,

20  without necessarily having any intention of carrying through with actual litigation. Indeed,

21  plaintiffs' representatives have repeatedly told the press that they do not necessarily want to pursue

22  litigation against all anonymous file sharers whose identities they obtain.[1] Moreover, the

23  anonymous publication of musical works, like other forms of performance, is speech protected by

24  the First Amendment. *In re Verizon Internet Svces*, 257 F.Supp.2d 244, 260 (D.D.C. 2003), *rev'd*

25  *on other grounds*, 351 F.3d 1229 (D.C. Cir.).[2]

26          [1]Before the DC Circuit ruled that the DMCA subpoena procedure was unavailable, the
    RIAA had subpoenaed about 2500 filesharers, <http://www.eff.org/IP/P2P/riaasubpoenas/>, but
27  only brought suit against or reached private settlements with approximately 600 persons.
    <http://www.washingtonpost.com/wp-dyn/articles/A35281-2004Jan21.html?nav=hptop_ts>.
28          [2]Judge Bates opined that First Amendment protection for file sharing defendants was

1  In order to balance these interests, the courts have drawn by analogy from the balancing test

2 that many courts have adopted in deciding whether to compel the disclosure of anonymous sources

3 or donors. *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986); *Miller v.*

4 *Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir. 1980); *Carey v. Hume,* 492 F.2d 631 (D.C. Cir.

5 1974); *Cervantes v. Time,* 464 F.2d 986 (8th Cir. 1972); *Baker v. F&F Investment*, 470 F.2d 778,

6 783 (2d Cir. 1972). *See also UAW v. National Right to Work*, 590 F.2d 1139, 1152 (D.C. Cir.

7 1978); *Ealy v. Littlejohn*, 569 F.2d 219, 229 (5th Cir. 1978). Accordingly, the courts that have

8 considered this question have adopted a several-part balancing test to decide whether to compel the

9 identification of an anonymous Internet speaker so that he may be served with process.

10  This test was most fully articulated in *Dendrite v. Doe*, 775 A.2d 756 (N.J.App. 2001),

11 which remains the only appellate opinion in the country to face the question squarely. *Dendrite*

12 requires the would-be plaintiff to (1) use the Internet to notify the accused of the pendency of the

13 identification proceeding and to explain how to present a defense; (2) quote verbatim the

14 statements allegedly actionable; (3) allege all elements of the cause of action; (4) present evidence

15 supporting the claim of violation, and (5) show the court that, on balance and in the particulars of

16 the case, the right to identify the speaker outweighs the First Amendment right of anonymity.

17  So long as the quantum of evidence demanded of the plaintiff to meet this test does not

18 exceed information that a plaintiff can reasonably obtain before undertaking discovery, this test

19 fairly balances the interest in pursuing wrongdoing against the First Amendment right to speak

20 _____

21 minimal because they are charged with copyright infringement and because they are not engaged in core political speech. The first reason begs the question. The First Amendment does not protect

22 libel or revelation of trade secrets or any of the variety of other wrongs that are commonly alleged in the lawsuits for which the courts have developed John Doe proceedings, any more than it

23 protects copyright infringement. However, at the initial stage of the lawsuit, no court has determined that anyone has committed any such wrongs. The very point of the multi-part balancing

24 test is to give the anonymous speaker an opportunity to contest the bona fides and merits of allegations of wrongdoing before the right of anonymity is permanently breached. The second

25 reason is simply wrong -- the Supreme Court's decisions on anonymous speech emphasize the right of writers and other artists to publish creative works under pseudonyms. Moreover, if the

26 defendants were simply individuals who displayed a carefully selected handful of files containing portions of songs - and the evidence goes no further than that as to most of the defendants - any fair

27 use defense that they might mount could have First Amendment underpinnings inasmuch as the Supreme Court has held that "fair use" itself embodies First Amendment values. *Eldred v.*

28 *Ashcroft*, 123 S.Ct. 769, 789-790 (2003); *Harper & Row Pub. v. Nation Enterprises*, 471 U.S. 539, 560 (1985).

anonymously. And, the final "balancing" part of the test enables courts to give extra protection to the speaker where, for example, the danger of retaliation is greater, or the speech at issue is core political speech about public officials, or to give extra weight to the plaintiff where the Court deems the speech at issue to be of only marginal value.

Several other courts have similarly set forth requirements of notice, review of the complaint, and presentation of argument and evidence before an ISP will be compelled to identify an Internet speaker. For example, in *Melvin v. Doe*, 49 Pa.D.&C.4th 449 (2000), *appeal quashed*, 789 A.2d 696, 2001 Pa.Super. 330 (2001), *appeal reinstated*, 836 A.2d 42 (Pa. 2003), the trial court allowed an anonymous defendant to present evidence and seek summary judgment, ordering disclosure only after finding genuine issues of material fact requiring trial. In reversing the denial of the defendant's interlocutory appeal, the Pennsylvania Supreme Court discussed at length the conflict between the right to speak anonymously and the plaintiff's right to identify a potential defendant, and remanded for consideration of whether evidence of actual damage had to be presented before the right of anonymous speech could be disregarded. 836 A.2d at 47-50.

In this District, in *Columbia Ins. Co. v. Seescandy.com*, 185 FRD 573 (N.D.Cal. 1999), the court required the plaintiff to make a good faith effort to communicate with the anonymous defendants and provide them with notice that the suit had been filed against them, thus assuring them an opportunity to defend their anonymity, and also compelled the plaintiff to demonstrate that it had viable claims against such defendants. *Id*. at 579. In *La Societe Metro Cash & Carry France v. Time Warner Cable,* 2003 WL 22962857 (Conn. Super.), the court applied a balancing test and considered evidence that allegedly defamatory statements were false and caused injury before deciding to allow discovery concerning the identity of the speaker. And in *Re Subpoena to America Online,* 52 VaCir 26, 34 (Fairfax 2000), *rev'd on other grounds*, 542 S.E.2d 377 (Va. 2001), the court required introduction of the allegedly actionable Internet posting, and required that the court be "satisfied by the pleadings or evidence supplied" that the subpoenaing party had a legitimate basis to contend that it was the victim of actionable conduct, "and . . . the subpoenaed identity information [must be] centrally needed to advance that claim."[3]

---

[3]The argument for a balancing test is more fully developed at

1    In opposition to this argument in a similar case pending in the District of Columbia, *UMG*

2    *Recordings v. Doe*, plaintiffs have argued that the courts "have repeatedly rejected claims that First

3    Amendment interests require a heightened level of scrutiny prior to issuance of a subpoena or other

4    judicial process." P. Mem. at 8. However, most of the cases plaintiffs cited for this proposition are

5    irrelevant because they consider only whether a particular demand for personal information

6    violates a generalized right of privacy under the Fourth Amendment, not the First Amendment.

7    *Smith v. Maryland*, 442 U.S. 735 (1979); *Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001); *United States*

8    *v. Hambrick*, 55 F.Supp.2d 504 (D.W.Va. 1999), *aff'd mem*, 225 F.3d 656 (4th Cir. 2000). *See also*

9    *AFGE v. HUD*, 351 F.3d 1229 (D.C. Cir. 1997) (cited by P. Mem. at 7). And two Supreme Court

10   cases that plaintiffs cite involve First Amendment issues not present here in *University of*

11   *Pennsylvania v. EEOC*, 493 U.S. 182 (1990), the issue was whether to extend the right of academic

12   freedom to recognize a privilege against disclosure of peer review materials, and in *Oklahoma*

13   *Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946), the Supreme Court refused to hold that the First

14   Amendment bars the application of the Fair Labor Standards Act to news companies.

15   The only support plaintiffs cited that is even close to being on point is a footnote in

16   *Reporters Comm. for Freedom of the Press v. American Tel. & Tel. Co.*, 593 F.2d 1030, 1050 n.67

17   (D.C. Cir. 1978), where the court refused to enjoin the telephone company from **voluntarily**

18   complying with Justice Department requests for toll records of reporters' telephone calls with

19   sources. Even assuming that this decision has any bearing on whether a court might **compel** the

20   identification of sources, it is well established that the First Amendment limits the compulsory

21   disclosure, pursuant to subpoena and otherwise, of names and indeed of other kinds of information.

22   *Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981). *See also AFL-CIO v. FEC*,

23   333 F.3d 168 (D.C. Cir. 2003); *Ealy v. Littlejohn*, 569 F.2d at 229.

24   Nor does the fact that the Doe defendants have disclosed their identities to their ISPs

25   constitute a "waiver" of their qualified First Amendment right to communicate anonymously. If

26   that were true, then *NAACP v. Alabama*, 357 U.S. 449 (1958), and *Bates v. City of Little Rock*, 361

27   U.S. 516 (1960), were both wrongly decided. In those cases, the Supreme Court overturned

28   <http://www.citizen.org/documents/Melvin%202.pdf>.

penalties imposed on the NAACP and its officers for refusing to comply with orders to identify members, whose names the NAACP of course knew, on the ground that compelled identification violated the members' right to remain anonymous. Similarly, *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334 (1995), and *Talley v. California*, 362 U.S. 60 (1960), were wrongly decided, because the authors of the unsigned leaflets identified themselves to their printers, and the distributors revealed their faces to the persons to whom they handed the leaflets. Indeed, if plaintiffs correctly state the law, there could be no anonymous Internet communication, because every Internet user is identified to his or her ISP. Hence, every *ex parte* request to identify every Internet speaker would have to be granted.

Indeed, speech is rarely literally anonymous to all persons at all times; if such nondisclosure were the precondition for application of the First Amendment, there would be no right to speak anonymously as a practical matter. But that is not the law. Decisions such as *Dendrite* and *Seescandy* require an evidentiary showing before plaintiffs may serve discovery seeking to identify Doe defendants sued for online communications, and this Court should follow their analysis.

In this case, of course, where the plaintiffs are respectable companies and their counsel are highly respected lawyers, it is difficult even to consider the possibility that the filing of the Complaint might not have been preceded by a meticulous investigation. On the other hand, it is not difficult for the plaintiffs to present solid evidence, including an affidavit by the individual who examined the files available for download from each defendant's computer, listened to the files, verified that they were copyrighted songs, and checked to be sure that those copyrights were registered and are owned by the plaintiffs, and to list in the affidavit or in an affidavit attachment the songs that the Doe made available for download. The Whitehead affidavit in this case is long on social policy and very short on first person averments about the individual defendants in this case. *See e.g. BMG Canada Inc., et al. v. John Doe, et al.*, 200 FC 488 at pages 8-10 (March 31, 2004) (copy attached as Exhibit 3 to *Amici's* Request for Judicial Notice filed concurrently) (affidavits of president of antipiracy protection company were unsupported hearsay and violated best evidence rule). Because this case will be among those to set a standard for all plaintiffs who

1    seek to identify anonymous Internet speakers based on claims of copyright infringement, including

2    those who are less scrupulous and ethical than these plaintiffs, the Court should not authorize a

3    subpoena until individualized, admissible evidence is presented about each Doe.

4         **B.    Personal Jurisdiction.**

5         One of the showings that plaintiffs have failed to make with respect to most of the

6    defendants is that the Court has personal jurisdiction over each of the eight defendants. The federal

7    courts have generally applied a sliding scale analysis to determine whether a defendant who has

8    posted information on the Internet that other persons can examine and download to computers

9    located throughout the world, to ensure that persons using the Internet are not automatically subject

10   to suit anywhere in the world. Under the sliding scale or "*Zippo*" analysis, after *Zippo Mfg. Co. v.*

11   *Zippo Dot Com*, 952 F.Supp. 1119 (W.D. Pa. 1997), defendants who passively post information on

12   the Internet for others to examine and copy are not subject to personal jurisdiction based on their

13   Internet postings, while defendants whose Internet sites are commercially "interactive," in the

14   sense that they use their sites to engage in business transactions, are subject to being sued in any

15   state in which a substantial number of business transactions occur. Along this continuum, the

16   greater the degree of commercial interactivity, the greater the liability for suit in a foreign

17   jurisdiction. *E.g.*, *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002); *Neogen*

18   *Corp. v. Neo Gen Screening*, 282 F.3d 883 (6th Cir. 2002); *Mink v. AAAA Development*, 190 F.3d

19   333 (5th Cir. 1999). The Ninth Circuit applies *Zippo's* sliding scale, *see, e.g.*, *Gator.com v. LL Bean*

20   *Inc.*, 341 F.3d 1072, 1080 (9th Cir. 2003) and clearly indicates that a website alone is not enough to

21   invoke jurisdiction. *Id.* at 1078-79; *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419

22   (9th Cir. 1997) (no jurisdiction over a Florida corporation which had directed "no commercial

23   activity over the Internet in Arizona [but only] post[ed] an essentially passive home page on the

24   web....")

25        The defendants in this case do not have websites, but it is alleged that their computers are

26   functioning in a manner comparable to a website, because they have opened a section of their

27   personal computers to the Internet in a manner that permits other persons with personal computers

28   to obtain files stored on those computers and download them. There is no contention that the

-8-

"music pirates" are charging for the information that is being made available. Therefore, defendants cannot be found at the "commercially interactive" end of the sliding scale, and the mere fact that the data on their computers can be accessed by others and downloaded in California is not a sufficient basis for subjecting them to suit here.

Moreover, although the Complaint alleges and the Whitehead Affidavit avers that the IP address that each of the defendants is alleged to have used to offer infringing material can be traced to an ISP, Covad, which "can be found" in Northern California, the attached declaration of Seth Schoen reveals a different picture. Mr. Schoen demonstrates that, by employing a more meticulous analysis than the one described by Mr. Whitehead, that most of the IP addresses set forth in Complaint Exhibit A are assigned to locations outside the California (and none is in Northern California). It is very likely that customers who connect to the Internet through those remote locations reside in those areas, and, more to the point, not in California. As Mr. Schoen's declaration shows, the technique and databases he used to obtain this information were readily accessible to plaintiffs before they filed this action. Indeed, at page 3, plaintiffs implicitly acknowledge that the Court lacks personal jurisdiction over many defendants.

Accordingly, on the face of the complaint, it appears that the great majority, if not all, of the defendants are not California residents. Additionally, as Mr. Schoen demonstrates, the record companies could have brought these actions in the correct jurisdictions by doing simple investigation using publicly-available information. Of course, Covad has address information for each of its customers, but there is no basis for this Court to compel Covad to identify defendants over whom the Court does not have personal jurisdiction. Moreover, it would be a substantial hardship for individual defendants residing out of state, who wish to protect their right to communicate anonymously on the Internet, to hire counsel to defend their rights in California. Accordingly, if any subpoenas are to be issued to Covad, they should only require Covad to specify the states in which each defendant resides, so that Covad can refile this action against such individuals in the proper jurisdictions.

**C.     Joinder.**

There is also substantial reason to question whether plaintiffs have properly joined all eight

1   defendants in a single action. Rule 20 reads as follows, in pertinent part:

2       All persons . . . may be joined in one action as defendants if there is asserted against
3       them jointly, severally or in the alternative, any right of relief in respect of arising
        out of the same transaction, occurrence, or series of transactions or occurrences and
4       if any question of law or fact common to all defendants will arise in the action.

5       Under this Rule, multiple defendants may be joined in a single lawsuit when three

6   conditions are met: (1) the right to relief must be "asserted against them jointly, severally or in the

7   alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of

8   transactions or occurrences"; **and** (3) there must be a common question of fact or law common to

9   all the defendants. In this case, there is no claim for relief jointly or severally or in the alternative.

10  Moreover, there is no common transaction or occurrence, and we question whether there is the

11  proper "series of transactions or occurrences." The individuals sued have no connection with each

12  other: they are claimed to have shared different music using different filesharing software at

13  different places throughout the country. [4]

14      Judge Newcomer of the Eastern District of Pennsylvania recognized these concerns in

15  ordering severance of a similar suit against 203 Does into 203 separate lawsuits. *BMG Music et al.*

16  *v. Does 1-203*, Civil Action no. 04-650 (E.D. Pa. March 5, 2004). *Amici's* Request for Judicial

17  Notice, Exh. 1.

18      The claims against the different Defendants will require separate trials as they may
        involve separate witnesses, different evidence, and different legal theories and
19      defenses, which could lead to confusion of the jury. *United States v. 1,071.08 Acres*
        *of Land, Yuma & Mahave Counties, Arizona*, 564 F.2d 1350 (9th Cir. 1977);
20      Fed.R.Civ.Pro 21; Fed.R.Civ.Pro 42(b). Moreover, the Court finds that there will
        almost certainly [be] separate issues of fact with respect to each Defendant.
21      Fed.R.Civ.Pro. 20.

22      [4]In *Pergo v. Alloc*, 262 F.Supp.2d 122, 127 (S.D.N.Y. 2003), the court characterized prongs
23  (1) and (2) as requirements in the alternative, deeming prong (1) to include only "joint and several"
    liability, and the language "or in the alternative" to begin prong (2). Although other cases have
24  described the rule that way as well, that is not the natural reading of the language. Prongs (1) and
    (2) both modify the term "request for relief," and are not stated in the alternative. Under the *Pergo*
25  reading, prong (1) consists of the words "jointly, severally," with no conjunction between the
    adverbs, which would not be grammatically correct. The words "or in the alternative" are plainly
26  part of the same series as "jointly, severally," and that series is either an adverbial clause modifying
    the verb "asserted" or an adjectival clause modifying the phrase "request for relief," just as prong
27  (2) (beginning with the words "in respect of") modifies that same phrase. Accordingly, the literal
    meaning of the language would require the request for relief to satisfy both criteria, just as the
28  phrase "tall mountain covered with glaciers" would not properly describe Mount Fuji, because
    although it is tall it has no glaciers.

1  Id., *slip op.* at 1. The U.S. District Court in the Middle District of Florida in *Interscope Records v.*

2  *Does 1-25*, Case No. 6:04-cv-197-Orl-22DAB (M.D. Fla. April 1, 2004), similarly ordered that

3  both plaintiffs and defendants be severed, noting "unreasonable prejudice and expense to the

4  Defendants."[5] *Amici's* Request for Judicial Notice, Exh. 2. Although Plaintiffs cite several other

5  cases in which discovery was ordered, *amici* submit that the reasoning in *BMG Music v. Does* and

6  *Interscope Records v. Does* is more persuasive.

7      Rule 20 requires that, for parties to be joined in the same lawsuit, they must be related **to**

8  **each other**. Plaintiffs cannot join unrelated individuals in a single action simply because they are

9  alleged to have violated the same law in the same way. Thus, for example, the Second Circuit, in

10  *Nassau County Assoc. of Insurance Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151 (2d

11  Cir. 1974), affirmed dismissal of 164 insurance companies from a suit claiming antitrust violations,

12  calling the suit a "gross abuse of procedure" because plaintiffs had not alleged conspiracy or action

13  in concert.[6]

14      Moreover, the allegation that the defendants all used the internet to make copyrighted music

15  available does not make their joinder proper. Unlike, for example, *In re Vitamins Antitrust Litig.*,

16  2000 WL 1475705, *18 (D.D.C.), in which each of the defendants was alleged to be engaged in a

17  single global antitrust conspiracy that was alleged in the complaint to be unlawful, there is nothing

18  inherently unlawful about using software to make files available through the Internet. It is the

19  provision of hundreds or thousands of copyrighted performances that is the wrongdoing alleged in

20      [5] As in *Interscope*, it appears from the face of the Complaint that not every one of the ten
21  Plaintiffs here "made available" songs by every Defendant." For example, Does 5 and 7 are each
   alleged to have shared files from only three of the Plaintiffs (Fonovisa, Warner Bros. and
22  Interscope for Doe 5 and Priority, UMG and BMG for Doe 7). Because the same problem existed
   there, the *Interscope* court required severance of the plaintiffs as well as the defendants.
23      [6] *Accord Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122 (S.D.N.Y. 2003) (denying joinder
   when only connection between defendants is that they may have infringed the same patent); *Kenvin*
24  *v. Newburger, Loeb & Co.,* 37 F.R.D. 473 (S.D.N.Y. 1965) (defendant stockholders misjoined
   where, although "wrongdoing of each defendant was identical, the loans and securities involved
25  and the dates on which the transactions were entered into differed ... plaintiffs had alleged
   unrelated acts which happened to involve violations of the same ... duty"); *Tele-Media Co. of*
26  *Western CT v. Antidormi*, 179 F.R.D. 75 (D.Conn. 1998) (denying joinder of 100 defendants who
   each used similar technology to infringe plaintiff's pay-per-view programming because defendants
27  did not act in concert); *Movie Systems v. Abel*, 99 F.R.D. 129 (D. Minn. 1983) (denying joinder of
   1,798 defendants who had allegedly all infringed the same television distributor's broadcasts
28  because, "although there were common practices and perhaps common questions of law," the
   independent defendants had not acted jointly).

this case, and the fact that each of the Doe defendants is alleged to have committed the same wrong against some or all of the same plaintiffs via the same medium does not make it appropriate to join them all in the same case, any more than every employer in Oakland who used the mail or the telephone to deny hundreds of employment applications could be joined in the same Title VII proceeding, simply because they used the same method to communicate allegedly discriminatory decisions. *Cf. Nassau Cy. Ass'n of Ins. Agents v. Aetna Life & Cas. Co.*, 497 F.2d 1151 (2d Cir. 1974) (refusing to allow 164 insurance companies to be joined in a single action just because they allegedly cheated hundreds of agents in the same way).

Our concern that corners might be cut if otherwise unrelated defendants are joined in a single action is heightened by the manner in which plaintiffs have sought leave to pursue discovery in this case. Plaintiffs' affidavit attaches hundreds of pages concerning the music files made available by two of the eight defendants and tells the Court that although comparable evidence could be made available with respect to each of the other defendants, it would be too burdensome to do so. However, although the courts exist to implement broad and important public policies, they do so by meting out individual justice. To be sure, it is more convenient to present evidence about only a few of the accused before obtaining discovery about all of them, but if it is important enough to sue all of them, it should be important enough to present sufficient evidence to justify discovery identifying each one of them.

### D. <u>Procedure for Subpoenas.</u>

Even assuming that the Court concludes that it should allow some or all of the discovery requested by plaintiffs, we have a modest suggestion about the terms of that discovery to better ensure that the Does have a realistic opportunity to object if they choose to do so. We ask the court to allow Covad sufficient time before its response to the subpoena is due to notify its subscribers that their identifies are at issue, so that, if they choose, the Does can offer evidence or argument in defense of their anonymity under the *Dendrite* standard. *Amici* suggest that the Court address this issue in its order, by directing Covad to provide notice within seven days of its receipt of the subpoena to each person whom its records reflect as having used the indicated IP addresses at the indicated times, to allow the defendants fourteen days from the time notice was received to file a

1   motion to quash, and to refrain from disclosure pending the disposition of any motion to quash.

2        In urging such additional time, we are not insensitive to plaintiffs' concerns about the need

3   for immediate action lest information contained in Covad's electronic records, showing which of

4   its customers used which IP numbers at which times. Plaintiffs' counsel can ask Covad for a

5   commitment to preserve that information pending this Court's ruling on whether it may pursue

6   discovery, and, if a subpoena is served, pending disposition of any timely filed motion to quash.

7        On the other hand, according to the dates listed in Exhibit A to the Complaint, plaintiffs

8   here are suing over material that they found on the Internet as early as September 2003 (Doe #4).

9   plaintiffs have not exactly sued expeditiously, and if they must wait a few more weeks to obtain the

10  necessary information, either pending a ruling or pending litigation in the proper jurisdictions, to

11  ensure that the First Amendment and Due Process rights of the alleged infringers are respected, we

12  do not expect that they will be unduly prejudiced.

13                        **III.    CONCLUSION**

14       The motion for expedited discovery should be considered and resolved in accordance with

15  the principles set forth above.

16

17  DATED:  April 2, 2004

18                        By _____
                                Cindy A. Cohn, Esq. (SBN 145997)
19                              ELECTRONIC FRONTIER FOUNDATION
                                454 Shotwell Street
20                              San Francisco, CA  94110
                                Telephone:     (415) 436-9333 x108
21                              Facsimile:      (415) 436-9993

22                              Attorneys for Amicus Curiae
                                ELECTRONIC FRONTIER FOUNDATION
23
                                Paul Alan Levy
24                              Charlotte Garden
                                PUBLIC CITIZEN LITIGATION GROUP
25                              1600 - 20th Street, N.W.
                                Washington, D.C. 20009
26                              Telephone:      (202) 588-1000

27                              Attorneys for Amicus Curiae
                                PUBLIC CITIZEN LITIGATION GROUP
28

                                -13-

1

2
Christopher A. Hansen
Aden J. Fine

3
AMERICAN CIVIL LIBERTIES UNION
18th floor

4
125 Broad Street
New York, New York 100004

5
Telephone:        (212) 549-2500

6
Attorneys for Amicus Curiae
AMERICAN CIVIL LIBERTIES UNION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28